# United States Court of Appeals

FILED

For the Eleventh Circuit

2009 AUG 28 P 3:06

No. 09-10042

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Jul 29, 2009
THOMAS K. KAHN
CLERK

District Court Docket Nos.
08-00096-CR-J-32HTS,
08-00284-CR-J-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EVGENY A. TALISOV,

Defendant-Appellant.

A True Copy - Attested:
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: [signature]
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court
for the Middle District of Florida

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
AUG 27 2009
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered: July 29, 2009
For the Court: Thomas K. Kahn, Clerk
By: Patch, Jeffrey

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2009
THOMAS K. KAHN
CLERK

---

No. 09-10042
Non-Argument Calendar

---

D. C. Docket Nos. 08-00096-CR-J-32HTS,
08-00284-CR-J-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EVGENY A. TALISOV,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Middle District of Florida

---

(July 29, 2009)

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Defendant Evgeny A. Talisov appeals his 15-month sentence for aiding and

abetting a fraudulent marriage, in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 2, and harboring a fugitive from arrest, in violation of 18 U.S.C. §§ 1071 and 3147(1). After review, we affirm.

## I. Factual Background

Evgeny A. Talisov's ("Talisov") criminal case arose out of a plan to keep his paramour—Russian immigrant Yulia Piskovaya ("Piskovaya")—from being forced to leave the United States when her four month J-1 visa expired. Although his heart may have been in the right place, it appears that his head was not. His plan violated federal law and defrauded the United States Navy to the tune of $21,790.14. The core facts are set forth in the Presentence Investigation Report ("PSI").

Talisov immigrated to the United States at age 17. And by age 24, he had acquired U.S. citizenship, married Anastasia Aberamenko, and served as an officer in the United States Navy. Talisov and his wife separated by March 2005 and ultimately divorced. But not until November 9, 2007.

Enter Piskovaya. Piskovaya entered the United States on May 22, 2006 with a visa due to expire on September 23, 2006. That 2006 summer, Talisov and Piskovaya became romantically involved. But without a change in Piskovaya's immigration status, Talisov's summer love would expire along with Piskovaya's

visa on September 23, 2006.

Under the impression that marriage to a United States citizen would give Piskovaya an opportunity to petition for permanent resident status, Talisov came up with a solution. Talisov approached fellow naval officer Andrew Smock ("Smock") and suggested that Smock marry Piskovaya. To make it worth Smock's while, Talisov informed Smock that marrying Piskovaya would make him eligible for a Basic Allowance for Housing ("BAH")—a monthly tax-free allowance paid to Armed Forces members on behalf of their spouses and dependents.

On September 14, 2006, with just over a week left before Piskovaya's visa expired, Talisov drove Smock and Piskovaya to the Duval County Clerk of Court's office in Jacksonville Beach, Florida. Smock and Piskovaya applied for a marriage license. Phone records showed that Talisov and Smock contacted each other nine times that day.

On September 22, 2006, with one day left on the visa clock, Smock married Piskovaya for the purpose of allowing her to petition for resident alien status. Phone records showed that Talisov and Smock contacted each other 11 times that day. The PSI noted that Smock never had intimate relations with Piskovaya and that "the only significant interaction between the two after the marriage pertained to filling out the required paperwork for her to gain resident alien status." Based

on the fraudulent marriage, Smock applied for and received $21,790.14 in BAH money from the United States Navy from September 2006 until June 2008.

On March 19, 2008, Talisov was indicted for knowingly aiding, abetting, counseling, and inducing Smock to enter into a fraudulent marriage for the purpose of allowing Piskovaya to evade the immigration laws, in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 2.[1] Talisov was arrested and released on bond. A condition of Talisov's release was that he not contact Piskovaya or Smock.

In late April 2008, Immigration and Customs Enforcement ("ICE") agents attempted to arrest Piskovaya at her last known address—Talisov's home. Talisov denied knowing her whereabouts and noted that he was prohibited from having any contact with Piskovaya.

A psychologist's report, designed to assess Talisov's competence to stand trial, noted that Talisov believed he had done nothing wrong and had no intention of pleading guilty. On June 23, 2008, the district court scheduled Talisov's case for trial on July 29, 2008. However, on July 25, 2008, Talisov's attorney moved to withdraw, and Talisov moved to continue the trial. The district court appointed

[1]On April 17, 2008, a two-count superseding indictment also charged Smock and Piskovaya with the same crime. Further, count two charged Smock with making or causing another to make a false, fictitious, and fraudulent claim on the United States for BAH, in violation of 18 U.S.C. § 287 and 18 U.S.C. § 2. Smock pled guilty to count two on July 21, 2008. Part of the plea deal included a dismissal of count one.

Talisov a new attorney on July 28, 2008. The district court's docket sheet reflects a number of government filings for, among other things, proposed jury instructions, proposed voir dire, and proposed verdict forms.

On August 4, 2008, ICE agents and United States Marshal Service personnel searched Talisov's home to find Piskovaya. Although Talisov again denied knowing where Piskovaya was, the agents found her hiding in Talisov's closet.[2] Both were arrested—Piskovaya for marriage fraud and Talisov for harboring a fugitive. On August 14, 2008, a federal grand jury returned a separate and second indictment against Talisov for harboring a fugitive from arrest while on pretrial release, in violation of 18 U.S.C. §§ 1071 and 3147(1).

On September 10, 2008, Talisov pled guilty to both the marriage fraud and harboring a fugitive crimes.

The district court consolidated the two cases for sentencing. The PSI set Talisov's base offense level at 11, pursuant to U.S.S.G. § 2L2.1(a), for his role in the fraudulent marriage. The PSI recommended: (1) a three-level reduction, pursuant to U.S.S.G. § 2L2.1(b)(1), because Talisov did not commit the offense "for profit"; (2) a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for obstructing or impeding justice by providing false information about Piskovaya's

---

[2]Piskovaya had been a fugitive on the marriage fraud indictment for almost four months.

whereabouts; and (3) a three-level enhancement, pursuant to U.S.S.G. § 3C1.3, because he committed the harboring a fugitive offense while he was on pretrial release. The PSI further recommended a two-level reduction, pursuant to U.S.S.G. § 3E1.1(a), because Talisov accepted personal responsibility for his offense conduct. Therefore, Talisov's total offense level of 11, combined with a category II criminal history, yielded an advisory guidelines imprisonment range of 10 to 16 months. The PSI recommended a 13-month sentence.

Before the sentencing hearing, the government filed written objections to the PSI. It argued, pursuant to U.S.S.G. § 3B1.1(c), that Talisov should receive a two-level role enhancement as the "organizer, manager, leader, or supervisor" of the marriage fraud because he "recruited and directed" Smock and Piskovaya. In a written Addendum to the PSI, the probation office maintained that Talisov's guidelines range had been correctly calculated and that, pursuant to application note 4 of U.S.S.G. § 3B1.1, "an aggravating adjustment does not apply to a defendant who merely suggests committing the offense." Talisov did not file objections to the PSI.

At sentencing, the government made two additional objections. The government objected to: (1) the three-level reduction, pursuant to U.S.S.G. § 2L2.1(b)(1), because Talisov's crime was committed for profit (in that Talisov's

scheme earned Smock $21,790.14 in profit) and (2) the two-level reduction, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility, because Talisov's conduct (especially harboring a fugitive while on pretrial release) did not demonstrate an acceptance of responsibility. The government acknowledged that its objections were not timely, but asserted that the original version of the PSI did not include the three-level not-for-profit reduction. It emphasized that it obtained a revised version of the PSI "a couple of days" before the sentencing hearing.

At sentencing, the government also offered additional arguments to support the § 3B1.1 role enhancement for "organizing" the crime. It stated that Talisov recruited Smock and Piskovaya, drove them to the county clerk's office, enticed Smock with the prospect of BAH money, delivered immigration papers to Smock, coached Smock on how to lie to immigration officials, instructed Smock to initial Piskovaya's lease to make it appear as if the two cohabitated, and, according to telephone records, communicated with Smock twenty times on the key dates in question (the September 14, 2006 date they went for the marriage license and the September 22, 2006 date they got married). And Talisov called Smock much more than Smock called him.

The government also explained why Talisov was not entitled to the two-level reduction for acceptance of responsibility. First, the government noted that,

prior to Tailsov's plea, it expended substantial resources in preparation for trial. Second, Talisov told the psychologist that he did not believe he had done anything wrong in facilitating the marriage fraud and that he had no intention of pleading guilty. The government argued that to obtain the reduction, a defendant needs more than a mere guilty plea. Talisov's conduct, including his crime of harboring a fugitive from arrest, weighed against awarding him the reduction.

Talisov's counsel responded by noting that he was uncertain of how to organize his responses to the government's new objections at sentencing. The district court responded by noting that he was inclined to allow the government's objections unless defense counsel felt that he was prejudiced by the delay:

> Well, and in fairness to you—I mean, if you're prejudiced, that's one thing. If you're not, then I think we should go forward.
>
> I—you know, the way this is supposed to work is that the objection should be made at the reporting phase, and then the probation officer is allowed to redo the report or file an addendum.
>
> And I understood that there were some technical and perhaps human glitches between the probation office and the U.S. Attorney's Office. And so I'm choosing to countenance the objections even though they were late.
>
> And one reason I do—I'm doing that is because—I've done it for defendants all the time. So I can't ever remember telling a defendant I'm not going to listen to your objection because you didn't do it on time. If I did, I'd be listening to a lot fewer objections, I can tell you that.
>
> So that's—and it seems to me fair is fair. You know, if you tell me that you're prejudiced and not able to make a presentation, then I'll listen to that and we can—there's things we can do about that.

Talisov's counsel stated that he only raised the issue so that the district court might excuse any perception of disorganization—not to argue that he was prejudiced. Indeed, Talisov's counsel stated:

> [T]he reason I mention that is just—in the event that my response doesn't follow exactly what the presentation from the government was, I just wanted the court to know. Certainly I've had an opportunity to review all this and prepare for the hearing. And I don't fault the government in any fashion or probation or anyone else.

The district court overruled the government's objection to the three-level reduction under U.S.S.G. § 2L2.1(b)(1) because Talisov did not individually profit from the fraudulent marriage. But it agreed with the government that Talisov was eligible for the two-level "organizer" enhancement since he was the "driving force" behind the marriage fraud crime.

The district court also ruled that Talisov was not entitled, under U.S.S.G. § 3E1.1(a), to an acceptance-of-responsibility reduction. First, the district court noted that Talisov "clearly was taking a strong position that he was going to trial, that he didn't do it, that he didn't think there was anything wrong with it." The district court based this conclusion, in part, on the psychologist's report. Second, the district court explained Talisov's change of attitude was "kind of forced on him" since Talisov chose not to plead guilty to marriage fraud until he was caught harboring Piskovaya. Although the district court emphasized that Talisov's

acceptance of blame may have been sincere, it stated that "somebody who obstructs justice normally doesn't get acceptance."

Ultimately, the district court determined that Talisov's offense level was 15 and that his criminal history category was II, which yielded an advisory guidelines range of 21 to 27 months in prison. After weighing the 18 U.S.C. § 3553(a) factors, the district court sentenced Talisov to 15 months in prison (12 months for marriage fraud and 3 months on the harboring count, to run consecutively), followed by 3 months of home detention and 2 years of supervised release.

## II. Discussion

Talisov challenges his 15-month sentence. We address each of his arguments in turn.

### A. Talisov's Role as an "Organizer"

Talisov challenges the district court's determination that, pursuant to U.S.S.G. § 3B1.1(c),[3] he "organized" the marriage fraud. In short, Talisov argues, consistent with the PSI's recommendation, that he merely "suggested" that Smock and Piskovaya get married, and mere suggestions do not rise to the level of "organizing" a crime. See U.S.S.G. § 3B1.1(c) cmt. n.4 ("This adjustment does not apply to a defendant who merely suggests committing the offense."). "A district

[3]U.S.S.G. § 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . increase by 2 levels."

court's upward adjustment of a defendant's Guidelines offense level due to his status as a leader or organizer under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error." United States v. Phillips, 287 F.3d 1053, 1055 (11th Cir. 2002).

The undisputed facts in the PSI show that Talisov originated the idea for the crime, recruited Smock to go through with the plan, informed Smock about the prospect of BAH money, convinced Smock to initial Piskovaya's lease, drove Smock and Piskovaya to the clerk's office, contacted Smock a number of times on the key dates in question, delivered Piskovaya's immigration paperwork to Smock, and told Smock how to answer certain questions during his interview with immigration officials. The district court properly viewed these facts as proof that: (1) Talisov was the "driving force" behind the crime; (2) the crime would not have happened without Talisov; (3) Talisov "led the pack"; and (4) Talisov was the "organizer" of the crime.

Alternatively, Talisov argues that even if he did more than "merely suggest" the crime, he lacked "control" over any of the other participants. Smock had his own financial motive to carry out the plan, and Piskovaya's own interest in marrying Smock means that everyone may have engaged in a scheme but not pursuant to Talisov's exercise of control. Talisov contends that a threshold finding

of control over another participant—not control over the criminal scheme—is a prerequisite to applying the § 3B1.1(c) enhancement.

We have described the threshold requirement for imposing the § 3B1.1(c) role enhancement as a finding that the defendant had the requisite "control" or "influence" over another participant in the criminal activity. See United States v. Campa, 529 F.3d 980, 1013 (11th Cir. 2008) ("The enhancement is unwarranted in the absence of a finding that the defendant asserted control or influence over at least one other participant in the crime.") (quotation marks omitted); United States v. Williams, 527 F.3d 1235, 1249 (2008) ("The court could have applied the § 3B1.1 adjustment if it found by a preponderance of the evidence that Bunnis Williams was criminally responsible for the wire fraud scheme or federal funds theft and that [the defendant] exerted some degree of control, leadership or influence over him."); United States v. Jiminez, 224 F.3d 1243, 1250 (11th Cir. 2000) ("[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement.");[4] United States v. Glover, 179 F.3d 1300, 1302 (11th Cir. 1999) ("The note makes clear that a two-level increase in a defendant's base offense level under section 3B1.1(c) is proper only if a defendant was the organizer or leader of at least one other participant in the crime, asserting

[4]In fact, the government cites Jiminez in its brief.

control or influence over at least that one participant."); United States v. Harness, 180 F.3d 1232, 1235 (11th Cir. 1999) ("Indeed, the findings of fact in the PSR and our review of the limited record before us reveal no evidence that would support a conclusion that Harness had any control over any of the other participants who engaged in the criminal activities.").

At the same time, we have also described the § 3B1.1(c) role enhancement as requiring "[n]othing more" than evidence that the defendant (1) recruited a participant in the crime, (2) prompted the participant to perform illegal conduct in preparation for the crime, and (3) briefed the participant on how to execute the crime. See United States v. Mandhai, 375 F.3d 1243, 1249 (11th Cir. 2004) (applying enhancement to individual who recruited another individual to participate in a terrorist plot); United States v. Glinton, 154 F.3d 1245, 1260 (11th Cir. 1998) ("Even if the quantity of drugs purchased is large enough to infer that the defendant knew they would be resold, a role enhancement is inappropriate absent evidence the defendant actively recruited buyers or directed their activities.") (emphasis in original).

No matter how one characterizes Talisov's conduct or the role enhancement, the district court did not clearly err in finding that Talisov was an "organizer" under § 3B1.1(c). An abundance of record evidence supports the contention that

Talisov exerted control or influence over Piskovaya and Smock. Talisov's active recruitment of Smock, his concoction of the unlawful marriage scheme, his detailed instructions on how to execute the marriage fraud, his apparent influence over even minor details such as initialing the lease, and his actively harboring of co-defendant Piskovaya in his home constitute sufficient evidence to demonstrate that Talisov exerted control or influence over Smock and Piskovaya. Indeed, Talisov's control and influence permeated every aspect of Smock and Piskovaya's fraudulent marriage, and the district court's fact-findings reflect this. In short, the district court did not clearly err in making this role determination.

**B. Talisov's Acceptance of Responsibility**

Talisov challenges the district court's denial of the acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1. That denial is entitled to great deference and we review for clear error. United States v. Moriarty, 429 F.3d 1012, 1022 (11th Cir. 2005). To qualify, a defendant must "clearly demonstrate[] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).

The undisputed facts indicate that from March 2008 until September 2008—the time between Talisov's arrest and indictment for marriage fraud and his arrest and indictment for harboring a fugitive—Talisov refused to plead guilty. In the meantime, the government took a number of steps in anticipation of trial,

including filing a number of pretrial motions with the court. The psychologist report noted that, during this time, Talisov felt that he had done nothing wrong. In fact, Talisov only pled guilty after he was caught lying to federal officials about co-defendant Piskovaya's whereabouts, hiding her in a closet, and being arrested for that conduct. Given these undisputed facts, we cannot say that the district court clearly erred.

First, we have held that even a defendant's guilty plea, which can show acceptance of responsibility, can be "outweighed by conduct of the defendant inconsistent with an acceptance of responsibility." Moriarty, 429 F.3d at 1023. Here, the district court emphasized: (1) Tailsov's refusal to accept responsibility until he was arrested for a second crime; (2) Talisov's comments to the psychologist that he did nothing wrong; and (3) Talisov's subsequent lies and concealment to federal officials. The district court did not clearly err in determining that this type of behavior was inconsistent with acceptance of responsibility.

Furthermore, Talisov's enhancement for obstruction of justice would "ordinarily indicate[]" that he has not accepted responsibility. See U.S.S.G. § 3E1.1 cmt. n.4; United States v. Amedeo, 370 F.3d 1305, 1321 (11th Cir. 2004). Therefore, Talisov is entitled to an acceptance of responsibility reduction only if

his case is extraordinary. See U.S.S.G. § 3E1.1 cmt. n.4; Amedeo, 370 F.3d at 1321. Talisov has failed to make such a showing. The district court's ruling is not clearly erroneous and we affirm the sentence in this respect.

**C. Government's Untimely PSI Objections**

Talisov argues that the district court erred by allowing the government to object to the PSI outside of the 14-day window provided by the Federal Rules of Criminal Procedure. See Fed. R. Crim. P. 32(f)(1) ("Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report."). But see Fed. R. Crim P. 32(i)(1)(D) ("At sentencing, the court . . . may, for good cause, allow a party to make a new objection at any time before sentence is imposed.").[5]

The district court committed no reversible error in authorizing the government to make the new objections at Talisov's sentencing. The district court explained that its decision to allow the new objections was based on the fact that the government did not obtain access to the revised PSI prior to the close of the 14-day window. Further, the government's perception of the fairness of Talisov's sentence had changed. We also emphasize that at the sentencing hearing, the

---

[5]We review the district court's good cause determination for abuse of discretion. See United States v. Wheeler, 322 F.3d 823, 827 (5th Cir. 2003).

district court provided Talisov's counsel an opportunity to explain whether Talisov would be prejudiced by proceeding at that time, whether counsel was unprepared, and whether counsel needed additional time. Talisov's counsel explicitly noted that he was prepared for the hearing and that the government was not to blame for any lack of preparedness. To date, Talisov has not shown any additional evidence he would have produced if given more time. Given Talisov's concession, and the district court's discretion to determine whether the government's delay was excused by good cause, we affirm the district court's ruling.[6]

Therefore, we affirm Talisov's 15-month sentence.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: [signature]
Deputy Clerk
Atlanta, Georgia

[6]Talisov raises an ineffective assistance of counsel claim with respect to his attorney's performance during sentencing. We decline to address that issue until the record is more fully developed. See United States v. Merrill, 513 F.3d 1293, 1308 (11th Cir. 2008); United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005) ("Except in the rare instance when the record is sufficiently developed, we will not address claims for ineffective assistance of counsel on direct appeal."). Talisov may raise his claim in a collateral proceeding. See Merrill, 513 F.3d at 1308.